1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Nathan Stephen James,

             Plaintiff,

    v.

Kilolo Kijakazi, Commissioner of Social
Security,

             Defendant.

Case No. 2:22-cv-00452-DJA

**Order**

Before the Court is Plaintiff Nathan Stephen James' motion for reversal and remand (ECF No. 19) and the Commissioner's countermotion to affirm (ECF No. 20) and response (ECF No. 21). Plaintiff did not file a rely. Because the Court finds that the ALJ's decision was supported by substantial evidence, it denies Plaintiff's motion to remand (ECF No. 19) and grants the Commissioner's countermotion to affirm (ECF No. 20). The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.     Background.**

    ***A.     Procedural history.***

Plaintiff filed an application for Disability Insurance Benefits on September 27, 2019, alleging an onset of disability commencing April 2, 2019. (ECF No. 19 at 2). His application was denied initially on February 19, 2020 and again upon reconsideration on August 13, 2020. (*Id.*). The ALJ issued an unfavorable decision on June 18, 2021. (*Id.*). On January 18, 2022, the Appeals Council denied review, making the ALJ's decision the final agency decision. (*Id.*).

    ***B.     The ALJ decision.***

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520. (AR 10-21). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2018. (AR 12). At step two, the ALJ found that

Plaintiff has the following severe impairments: status post lumbar discectomy with mild

degenerative disk disease and stenosis, obesity, and right carpal tunnel syndrome.  (AR 13).  At

step three, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix I.  (AR 14).  In making this finding, the ALJ considered

Listings 1.15 and 1.18.  (AR 15).

At step four, the ALJ found that Plaintiff has a residual functional capacity to perform

light work as defined in 20 C.F.R. § 404.1567(b) except:

> lift and/or carry 10 pounds up to 2/3 of [an] 8-hour workday and 20
> pounds up to 1/3; stand and/or walk for 6 hours; sit for 6 hours; he
> is able to climb ladders, ropes[,] and scaffolds up to 1/3 of [an] 8-
> hour workday and perform all other postural activities up to 2/3; he
> is able to use his dominant right upper extremity for fine fingering
> and gross manipulation up to 2/3 of [an] 8-hour workday; he can be
> exposed to hazards and vibrations up to 2/3 of [an] 8-hour workday

(AR 16).

At step five, the ALJ found that Plaintiff is unable to perform past relevant work.  (AR

20).  However, the ALJ found Plaintiff capable of performing occupations that exist in significant

numbers in the national economy such as: production assembler, storage rental clerk, and marker.

(AR 21).  Accordingly, the ALJ found that Plaintiff had not been disabled from April 2, 2018.

(AR 21).

### 1.    The ALJ's analysis of Virginia Mol, FNP's findings.

In evaluating FNP Mol's physical assessment, the ALJ noted that FNP Mol had found

that,

> [T]he claimant could walk 4 city blocks without rest or significant
> pain, sit 3 hours in an[] 8 hour workday, stand/walk 4 hours in an 8
> hour workday, frequently lift and carry less than 10 pounds, would
> miss more than 4 days of work per month due to his impairments
> and would require 2-3 hours of unscheduled breaks during the work.

(AR 19).

1     The ALJ found FNP Mol's assessment not persuasive.  (AR 19).  He noted that,

2         Ms. Mol did not support her extreme assessment with objective
3         findings.  She simply noted that the claimant has a history of low
          back pain.  Moreover, her assessment is inconsistent with objective
4         medical findings mentioned above that include no gross deformities,
          no edema, no pain, normal spinal curvature, normal range of motion,
5         negative straight leg raise, intact sensation; no misalignment or
          crepitation, no effusion or instability, normal reflexes, normal
6         strength[,] and normal gait.

7     (AR 20).

8              2.    The ALJ's rejection of Plaintiff's PTSD as non-severe.

9     The ALJ considered Plaintiff's PTSD to be non-severe.  (AR 13).  He noted that Plaintiff

10    reported symptoms including flashbacks, difficulty concentrating, difficulty focusing, and fear.

11    (AR 13).  But despite these difficulties, the ALJ noted that mental status examination findings

12    showed that Plaintiff "exhibited appropriate interaction and dress, adequate concentration, alert,

13    no delusion or obsessions, intact memory, good judgment, orientation times three, no suicidal or

14    homicidal ideations, cooperative, normal speech rate and volume, appropriate thought process

15    and contact and intact cognition."  (AR 13).  In making this finding, the ALJ noted that Plaintiff

16    has a service dog, but that Plaintiff did not state that the dog is required for him to be capable of

17    sustaining employment.  (AR 13).  In addressing Plaintiff's RFC, the ALJ also acknowledged

18    Plaintiff's service-connected disability that includes PTSD at 70%.  (AR 17).

19    **II.    Standard.**

20    The court reviews administrative decisions in social security disability benefits cases

21    under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section

22    405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security

23    made after a hearing to which he was a party, irrespective of the amount in controversy, may

24    obtain a review of such decision by a civil action…brought in the district court of the United

25    States for the judicial district in which the plaintiff resides."  The court may enter, "upon the

26    pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

27    decision of the Commissioner of Social Security, with or without remanding the case for a

28    rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or

reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

**III.    Disability evaluation process.**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical evidence" in support of his claim for disability.  20 C.F.R. § 404.1514.  If the individual establishes an inability to perform his prior work, then the burden

1  shifts to the Commissioner to show that the individual can perform other substantial gainful work

2  that exists in the national economy.  *Reddick*, 157 F.3d at 721.

3      The ALJ follows a five-step sequential evaluation process in determining whether an

4  individual is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If

5  at any step the ALJ determines that she can make a finding of disability or non-disability, a

6  determination will be made, and no further evaluation is required.  *See* 20 C.F.R.

7  § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires the ALJ to

8  determine whether the individual is engaged in substantial gainful activity ("SGA").  20 C.F.R.

9  § 404.1520(b).  SGA is defined as work activity that is both substantial and gainful; it involves

10  doing significant physical or mental activities usually for pay or profit.  *Id.*; 20 C.F.R.

11  § 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of not disabled is made.  If

12  the individual is not engaged in SGA, then the analysis proceeds to step two.

13      Step two addresses whether the individual has a medically determinable impairment that

14  is severe or a combination of impairments that significantly limits him from performing basic

15  work activities.  20 C.F.R. § 404.1520(c).  An impairment or combination of impairments is not

16  severe when medical and other evidence establishes only a slight abnormality or a combination of

17  slight abnormalities that would have no more than a minimal effect on the individual's ability to

18  work.  20 C.F.R. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28.   If the individual

19  does not have a severe medically determinable impairment or combination of impairments, then a

20  finding of not disabled is made.  If the individual has a severe medically determinable impairment

21  or combination of impairments, then the analysis proceeds to step three.

22      Step three requires the ALJ to determine whether the individual's impairments or

23  combination of impairments meet or medically equal the criteria of an impairment listed in 20

24  C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If

25  the individual's impairment or combination of impairments meet or equal the criteria of a listing

26  and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20

27  C.F.R. § 404.1520(a)(4)(iii).  If the individual's impairment or combination of impairments does

28

1    not meet or equal the criteria of a listing or meet the duration requirement, then the analysis

2    proceeds to step four.

3            Before moving to step four, however, the ALJ must first determine the individual's RFC,

4    which is a function-by-function assessment of the individual's ability to do physical and mental

5    work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R.

6    § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the

7    relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be

8    accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R.

9    § 404.1529; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or

10   functionally limiting effects of pain or other symptoms are not substantiated by objective medical

11   evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire

12   case record.  The ALJ must also consider opinion evidence in accordance with the requirements

13   of 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017.

14           Step four requires the ALJ to determine whether the individual has the RFC to perform his

15   past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the

16   individual actually performed it or as it is generally performed in the national economy within the

17   last fifteen years or fifteen years before the date that disability must be established.  In addition,

18   the work must have lasted long enough for the individual to learn the job and performed at SGA.

19   20 C.F.R. §§ 404.1560(b) and 404.1565.  If the individual has the RFC to perform his past work,

20   then a finding of not disabled is made.  If the individual is unable to perform any PRW or does

21   not have any PRW, then the analysis proceeds to step five.

22           Step five requires the ALJ to determine whether the individual can do any other work

23   considering her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If he can

24   do other work, then a finding of not disabled is made.  Although the individual generally

25   continues to have the burden of proving disability at this step, a limited burden of going forward

26   with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing

27   evidence that demonstrates that other work exists in significant numbers in the national economy

28   that the individual can do.  *Yuckert*, 482 U.S. at 141-42

**IV.     Analysis and findings.**

    ***A.       FNP Mol.***

        1.       <u>The parties' arguments.</u>

Plaintiff argues that the ALJ's conclusion that FNP Mol's opinion was unsupported and inconsistent was the result of "cherry picking" from the record.  (ECF No. 19 at 11).  He asserts that the ALJ cited from only six pages of the record, ignoring other portions of the record that was consistent with FNP Mol's opinion.  (*Id.* at 11-13).  Plaintiff points to various points of the record demonstrating the extent of his back pain and leg pain as examples.  (*Id.*).  Plaintiff adds that this error was not harmless because FNP Mol opined that Plaintiff would be absent from work due to low back pain more than four times per month and the vocational expert opined that if a person were absent from work two days per month on a consistent basis that individual could not be competitively employed.  (*Id.*).

The Commissioner responds that the ALJ correctly found that FNP Mol's opinion was neither supported nor consistent.  (ECF No. 20 at 8).  Regarding supportability, the Commissioner points out that FNP Mol provided no support of her opinion by referencing objective findings.  (*Id.* at 9).  Regarding consistency, Commissioner points out that, while the ALJ cited six pages in finding FNP Mol's opinion inconsistent, the ALJ summarized evidence from the record and acknowledged Plaintiff's back pain.  (*Id.* at 10).  But ultimately, the ALJ considered—at numerous points in the decision—how Plaintiff presented with normal musculoskeletal limits.  (*Id.* at 10-11).

        2.       <u>Analysis.</u>

    Within the administrative record, an ALJ may encounter medical opinions from three types of physicians: treating, examining, and non-examining.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  For claims filed on or after March 27, 2017, no deference or specific evidentiary weight, including controlling weight, will be given to any medical opinions or prior administrative medical findings, including those from a plaintiff's medical sources.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  When evaluating the persuasiveness of medical opinions and prior administrative medical findings, the most important factors

considered are supportability and consistency.  *Id.*  When a finding is made on persuasiveness,

there must be an explanation of how the ALJ considered the supportability and consistency

factors for a medical source's medical opinions or prior administrative medical findings within

the determination or decision.  *Id.*; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The

more relevant the objective medical evidence and supporting explanations presented by a medical

source are to support their medical opinions or prior administrative medical findings, the more

persuasive the medical opinions or prior administrative medical findings will be.  20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1).  The more consistent a medical opinion or prior

administrative medical finding is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion or prior administrative medical

finding will be.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The Court finds that the ALJ's decision to find FRN Mol's opinion unpersuasive was

supported by substantial evidence.  Regarding supportability, while Plaintiff argues that the ALJ

erred by finding FRN Mol's opinion unsupported, Plaintiff does not point to any portions of the

record showing that FRN Mol relied on objective medical evidence or supporting explanations by

a medical source in reaching her opinion.  Nor does Plaintiff argue that FRN Mol's opinion was

supported by her experience treating Plaintiff.  And FRN Mol's opinion lacks any reference to

objective medical evidence or supporting explanations by a medical source.  (AR 784-85).

Regarding consistency, the Court finds that the ALJ properly considered whether FRN

Mol's opinion was consistent with the record, in particular by citing to many of the records

Plaintiff references.  Plaintiff points out that he had low back pain in February and March of 2018

and that x-rays and MRIs revealed degenerative changes, disc extrusion, and spinal canal

narrowing, amongst other issues.  (AR 381, 382, 384).  Plaintiff also points to records that show

that he received surgery for these issues in April of 2018.  (AR 403, 439, 440, 535-36).  But while

Plaintiff argues that a follow up in June of 2018 revealed that he still had pain while lying on his

side, he omits that the follow up provides that,

> He is doing extremely well from this procedure.  He has no real back
> pain at this point, no real leg pain.  He is doing well.  Lying on his

side is the only time it really bothers him.  He, otherwise, is kind of
back to normal activities.

(AR 654).

Plaintiff points to records demonstrating that, after his surgery, he fell down the stairs in
August of 2019.  (AR 711).  Plaintiff explains that he underwent an x-ray a few days following
the fall which revealed mild degenerative changes and that his physical exam revealed mildly
antalgic gait and pain in his legs and low back consistent with a spasm or strain.  (AR 495).

In finding FRN Mol's opinion inconsistent with the record, the ALJ references back to his
discussion of Plaintiff's history of back pain, including many of the same records which Plaintiff
cites.  The ALJ referenced Plaintiff's MRI in February and March of 2018 and acknowledged that
it demonstrated degenerative changes.  (AR 381, 542[1]).  But the ALJ noted that Plaintiff
underwent surgery in April of 2018.  (AR 17)  And the ALJ noted that in July of 2020, following
that surgery and Plaintiff's fall in August of 2019,

> [T]he claimant exhibited normal gait and the ability to toe walk, heel
> walk, tandem walk, hop on one or two feet, get on and off the exam
> table and squat without difficulty…Moreover, the claimant
> displayed normal range of motion in all joints, no atrophy, no edema
> and the claimant was able to bend completely forward while sitting
> to put on shoes.  There was no pain reported during a supine leg raise
> and seated straight leg raise.  However, he was uncomfortable lying
> supine.

(AR 17).

The Court finds that Plaintiff's challenge to the ALJ discounting FRN Mol's opinion fails.
The ALJ properly considered FRN Mol's opinions considering the amended regulations and
considered both the supportability and consistency of her opinions in consideration with the other
medical opinions available.  The Court thus denies Plaintiff's motion to reverse or remand on this
issue.

---

[1] The report referenced on AR 542 is identical to AR 382, to which Plaintiff cites.

1

       **B.**      ***Plaintiff's PTSD.***

2

             1.      <u>The parties' arguments.</u>

3

       Plaintiff argues that the ALJ's RFC is unsupported because the ALJ rejected Plaintiff's

4 claim of PTSD as non-severe.  (ECF No. 19 at 13).  Plaintiff asserts that this was an error

5 because, in doing so, the ALJ failed to discuss evidence clearly contrary to his findings.  (*Id.* at

6 14-15).  This evidence includes that Plaintiff presented to therapy sessions with his service dog;

7 that Plaintiff was diagnosed with PTSD, stimulant use disorder, and bereavement on two

8 occasions; and that Plaintiff was assessed with 90% service-connected disability, 70% of which

9 was attributable to PTSD.  (*Id.* at 14).  Plaintiff concludes that the error was not harmless because

10 "a substantial loss of ability to meet any of the basic mental demands of competitive,

11 remunerative, unskilled work would justify a finding of disability because even favorable age,

12 education, or work experience will not offset such a severely limited occupational base."  (*Id.* at

13 16).

14        The Commissioner responds that Plaintiff did not dispute the ALJ's findings made in

15 reaching the overall conclusion that Plaintiff's PTSD was not severe, rather Plaintiff disagrees

16 with the overall conclusion.  (ECF No. 20 at 15).  But the Commissioner points out that, although

17 Plaintiff cites records demonstrating that he was sometimes found to have restricted affect,

18 dysphoric mood, and fair to moderate insight, the ALJ *acknowledged* that records demonstrated

19 depressed moods.  (*Id.*).  But Plaintiff did not point to other evidence to show why these

20 particular records show he was *more* limited than the ALJ found.  (*Id.*).  Regarding Plaintiff's

21 service dog, the Commissioner argues that Plaintiff failed to explain whether his dog is required

22 or prescribed; Plaintiff only states that he had a dog with him.  (*Id.* at 16).  Regarding his service-

23 connected disability, the Commissioner argues that the ALJ did not need to provide any analysis

24 for decisions from other government agencies because such decisions are based on different rules.

25 (*Id.* at 15).  The Commissioner concludes that, even if the Court found that the ALJ made an

26 error, that error would be harmless because the ALJ later addressed Plaintiff's PTSD—including

27 his service dog and service-connected disability rating—in determining Plaintiff's RFC.  (*Id.* at

28 17).

1          2.      Analysis.

2          Step two of the five-step sequential evaluation process establishes a de minimis threshold

3   for determining whether a medically determinable impairment or combination of impairments is

4   severe.   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An ALJ may find a medically

5   determinable impairment or combination of impairments is non-severe "'only if the evidence

6   establishes a slight abnormality that has no more than a minimal effect on an individual's

7   [physical or mental] ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)

8   (quoting *Smolen*, 80 F.3d at 1290).  Basic work activities include physical functions like walking,

9   standing, and carrying as well as the capacity to see, hear, speak, understand, remember simple

10  instructions, respond appropriately to work situations, and deal with changes in a routine work

11  setting.  *See* 20 C.F.R. § 416.922(b).  The plaintiff has the burden of proving that her

12  "impairments or their symptoms affect h[er] ability to perform basic work activities."  *Edlund v.*

13  *Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001).  A step-two error is harmless, however, if

14  the ALJ considers the impairment at step four.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.

15  2007); Social Security Ruling ("SSR") 96-8p ("[i]n assessing RFC, the adjudicator must consider

16  limitations and restrictions imposed by all of an individual's impairments, even those that are not

17  'severe.').  Because the ALJ considers all impairments, both severe and non-severe, in

18  determining a plaintiff's residual functional capacity, "the [residual functional capacity] therefore

19  *should* be exactly the same regardless of whether certain impairments are considered 'severe' or

20  not."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (emphasis in original).

21         The ALJ did not err in finding Plaintiff's PTSD was non-severe.  The ALJ found that

22  Plaintiff's PTSD was non-severe because it does not cause more than minimal limitation in the

23  Plaintiff's ability to perform basic mental work activities.  (AR 13).  In doing so, the ALJ

24  expressly considered Plaintiff's therapy dog.  (AR 13).  But the ALJ noted, as the Commissioner

25  points out, that Plaintiff did not state that the dog was required for the claimant to be capable of

26  sustaining employment.  (AR 13).  Even if the ALJ failed to consider that Plaintiff kept his dog

27  with him at appointments, it is unclear how that would constitute an error at step two.  While

28  Plaintiff asserts that his service dog is necessary for functioning, the two records to which he

1    points for this assertion merely show that he presented to an appointment with his dog and

2    reference that he had a service dog.  (ECF No. 19 at 14) (citing (AR 475, 774).  These records do

3    not include opinions from Plaintiff's care providers or examiners that his service dog is necessary

4    to his functioning.  (AR 475, 774).  The ALJ also did mention Plaintiff's service-connected

5    disability, albeit not in connection with finding his PTSD non-severe.  (AR 17).  But the ALJ was

6    not required to analyze this under 20 C.F.R. § 404.1504, which provides that "in claims filed…on

7    or after March 27, 2017, we will not provide any analysis in our determination or decision about a

8    decision made by another governmental agency…about whether you are disabled…"

9            But even if the ALJ erred in finding Plaintiff's PTSD to be non-severe, that error is

10   harmless because the ALJ nonetheless considered Plaintiff's PTSD in determining RFC.  (AR 16-

11   18).  The ALJ noted that Plaintiff's PTSD made it difficult for him to focus, concentrate, and

12   complete tasks.  (AR 17).  He also noted that 70% of Plaintiff's service-connected disability was

13   related to PTSD.  (AR 17).  The ALJ also considered Plaintiff's service dog.  (AR 18).  Because

14   the ALJ considered Plaintiff's PTSD, along with his service dog and service-connected disability

15   at step four, any error was harmless.

16

17           **IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 19) is

18   **DENIED**.

19            **IT IS FURTHER ORDERED** that the Commissioner's countermotion to affirm (ECF

20   No. 20) is **GRANTED**.  The Clerk of Court is kindly directed to enter judgment accordingly and

21   close this case.

22

23           DATED: February 1, 2023

24                                                            _____

25                                                            DANIEL J. ALBREGTS
                                                             UNITED STATES MAGISTRATE JUDGE

26

27

28